IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>WILLIAM THOMAS SCOTT,<br><br>　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO MODIFY SENTENCE TO WAIVE RESTITUTION [ECF No. 95]<br><br>Case No.  2:07-CR-515-CW<br><br>Hon. Clark Waddoups |

　　　　This matter is before the court on Defendant William Thomas Scott's "Proposed—Order Waiver of Restitution & Violation of Probation," which was filed on May 30, 2025.  [*See* ECF No. 95.]  The court has construed Mr. Scott's filing as a motion to modify his sentence to waive restitution (the "Motion").  On June 24, 2025, the United States filed its response to Mr. Scott's Motion.  [*See* ECF No. 96.]  The court, having reviewed the Motion, the United States' response, and the relevant law, DENIES Mr. Scott's Motion for the reasons set forth below.

## BACKGROUND FACTS

　　　　On August 16, 2010, following entry of a guilty plea to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), Mr. Scott was sentenced to 60 months' imprisonment and ordered to pay restitution in the amount of $219,546.10 to one of the known victims involved in the child pornography that he was convicted of possessing.  [*See* ECF Nos. 60 & 62.]  Restitution in such cases

is mandatory.  The Mandatory Victim Restitution Act ("MVRA") requires restitution for victims of federal crimes involving child pornography cases.  *See* 18 U.S.C. § 2259(a)("…the court shall order restitution for any offense under [18 U.S.C. 2252A]") & (b)(4) ("The issuance of a restitution order under this section is mandatory.").  Indeed, the MRVA requires that in every child pornography case the restitution order must be at least $3,000, *see* 18 U.S.C. § 2259(b)(2)(B), and be issued without any consideration of the economic circumstances of the defendant.  *See* 18 U.S.C. § 2259(b)(4)(B)(i); 18 U.S.C. § 3664(f)(1)(A).

Under the MRVA, once a required restitution order has been entered the court has very limited authority to make any changes to that order.  As applicable here, the only mechanism for doing so is set forth in 18 U.S.C. 3664(o), which permits an adjustment to the restitution order to the extent it is permitted under subsection (k).  *See U.S. v. Wyss*, 744 F.3d 1214, 1217–18 (10th Cir. 2014).

Pursuant to subsection (k), if the court is notified that there has been a "material change in the defendant's economic circumstances that might affect the defendant's ability to pay," the court may "adjust the [restitution] payment schedule, or require immediate payment in full." 18 U.S.C. § 3664(k).[1]  Under this provision the court may "relax the manner of payment based on the defendant's financial resources." *Wyss*, 744 F.3d at 1219 (cleaned up).  A request for such a change, however, must be well-documented and substantiated.  The burden of proof

---

[1] Before doing so, however, the "Attorney General [of the United State] must certify to the court that the victim … owed restitution has been notified of the change in circumstances." 18 U.S.C. § 3664(k).  No such certification has been made here.

to establish changed circumstances lies with the defendant who is seeking some adjustment.  *See* 18 U.S.C. § 3664(e) ("The burden of demonstrating the financial resources of the defendant … shall be on the defendant."); *see United States v. Read-Forbes*, No. CR 12-20099-01, 2020 WL 3639806, at *1–2 (D. Kan. July 6, 2020) (concluding that court lacked jurisdiction to grant relief under §3664(k) where defendant, who had the burden to show that her financial circumstances changed, did not show a material change in her financial circumstances) (citing *United States v. Rainey*, 794 F. App'x 728, 732 (10th Cir. 2019)).  Importantly, subsection (k) does not authorize a reduction in the total amount of restitution ordered.  *See Wyss*, 744 F.3d at 1219 (reversing district court's decision to reduce amount of restitution owed noting that "[n]either subsection (k) nor any other provision of § 3664, however, authorizes a reduction in the amount of restitution order over three years prior").

## ANALYSIS

In his Motion, Mr. Scott is asking the court to "waive the payment [of] $1425.47" of his restitution for two reasons:  1) because he "remains incarcerated, and his period of supervised release has not begun"; and 2) because his restitution order is an "excessive fine."  [*See* ECF No. 95 at 1–2.]

As threshold matter, regardless of the footing for his request, to the extent Mr. Scott's Motion can be read to have his restitution amount reduced by $1,425.17, that request must be summarily denied.  As noted by the Tenth Circuit in *Wyss*, the

court has no power to reduce the total amount of the restitution order entered against Mr. Scott.  *See Wyss*, 744 F.3d at 1219.

Next, to the extent Mr. Scott is challenging his original order of restitution as an excessive fine, he cites no authority (and the court is not aware of any) that would allow him to raise such a challenge in this procedural posture more than 15 years after the restitution order was entered.  Moreover, the Tenth Circuit has previously rejected Mr. Scott's efforts to seek substantive review of his restitution order because he had waived all such rights in his plea agreement.  *See United States v. Scott*, 410 F. App'x 166, 168 (10th Cir. 2011).[2]

And finally, as to his claim that his continued incarceration in state court[3]—which also prevents him from serving out his federal supervised release—warrants any change in his restitution payment schedule, Mr. Scott's argument fails.  The restitution order in this case expressly ordered—consistent with the MRVA—that restitution payments shall be made by Mr. Scott while he is incarcerated.  [*See* ECF

---

[2]  The court also notes that while the Tenth Circuit has not addressed this issue, the other federal circuits that have considered this Excessive Fines issue have held that "where the restitution order reflects the amount of the victim's loss no constitutional violation has occurred."  *See United States v. Newell*, 658 F.3d 1, 35 (1st Cir. 2011) (citing *United States v. Lessner*, 498 F.3d 185, 205–06 (3d Cir. 2007), *United States v. Newsome*, 322 F.3d 328, 342 (4th Cir. 2003), and *United States v. Dubose*, 146 F.3d 1141, 1145 (9th Cir.1998) ("[W]e reject defendants' contention that [restitution ordered pursuant to] the MVRA violates the Eighth Amendment's proscription against excessive fines, either facially or as applied")); *see also United States v. Basurto*, 117 F. Supp. 3d 1266, 1299 (D.N.M. 2015) (noting that "monetary sanction, however labeled, is a 'fine' under the Excessive Fines Clause only to the extent that it is punitive"), *aff'd*, 834 F.3d 1109 (10th Cir. 2016).

[3]  Mr. Scott's term of federal imprisonment ended on January 26, 2015.  On or about August 15, 2016, Mr. Scott was arrested on Utah state charges involving allegations of sexual abuse of a minor.  On May 23, 2017, and based upon his guilty plea, Mr. Scott was sentenced to two consecutive 15-year-to-life sentences for attempted rape of a child and attempted sodomy of a child.  He is currently incarcerated at the Utah State Correctional Facility in Salt Lake City, Utah.

No. 62 at 6.]  In addition, the court specifically informed Mr. Scott at his sentencing that "[d]uring the term of imprisonment, he shall pay a minimum of at least $25 per month which may be increased based on greater earning capacity." [*See* Transcript of Sentencing Hearing, ECF No. 77, at 35:1–19.]  Thus, Mr. Scott's status as an incarcerated individual—standing alone—does not provide any basis to adjust his restitution payments.

Nor has Mr. Scott established that he has had any material change in his economic circumstances that would warrant any modification of his restitution payment schedule.  Other than noting his current incarceration status, Mr. Scott has not presented any argument or evidence that his financial circumstances have materially changed.

Moreover, in response to Mr. Scott's Motion the Government asserts that during the time he was in federal prison, involuntary deductions under the United States' Treasury Offset Program ("TOP") were taken from Mr. Scott's prison accounts to make restitution payments.  [See ECF No. 96 at 2.]  In addition, during the period when Mr. Scott was on federal supervised release (following his federal incarceration but before he was arrested for his state offenses), Mr. Scott initially made monthly voluntary restitution payments and that in April 2016 additional TOP deductions were taken from some of Mr. Scott's financial sources.  [*Id.* at 3.]  And finally, during the period he has been incarcerated in state prison, additional TOP deductions were taken from Mr. Scott in August 2021 and January 2023 to meet his restitution obligations.  [*See id.* at 3.]  Based upon these past payments,

and absent any contrary argument or evidence from Mr. Scott, it does not appear that Mr. Scott's economic circumstances have materially changed since the restitution order was entered.  *See, e.g., United States v. Turner*, No. 6:99-cr-10023, 2023 WL 1927405, at *2 (D. Kan. Feb. 10, 2023) (denying motion to waive restitution interest and denying request for a hearing noting defendant successfully made past restitution payments and did not sufficiently show that he was unable to make remaining payments).

## CONCLUSION

Accordingly, and for the reasons discussed above, IT IS ORDERED that Mr. Scott's Motion [ECF No. 95] is DENIED.

DATED this 19th day of August 2025.

BY THE COURT:

Hon. Clark Waddoups
United States District Judge