**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>WILLIAM THOMAS SCOTT,<br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br>Case No. 2:07-CR-515<br>Hon. Clark Waddoups |

This matter is before the court on *pro se* Defendant William Thomas Scott's "Motion Rule 7A to Enforce Order" (the "Motion"), which was received by the court on July 27, 2026. [*See* ECF No. 108.] On August 27, 2026, the court directed the Unites States to file a response to the Motion, which it did on September 16, 2026. [*See* ECF No. 110.] After reviewing the Motion, the United States' response in opposition, and the applicable law, and for the reasons discussed below, Mr. Scott's Motion is denied.

**BACKGROUND FACTS**

On August 16, 2010, following entry of a guilty plea to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), Mr. Scott was sentenced to 60 months' imprisonment and a 78-month term of supervised release, and ordered to pay restitution in the amount of $219,546.10. [*See* ECF Nos. 60 & 62.] Mr. Scott's term of federal imprisonment ended on January 26, 2015. And although Mr. Scott's restitution was "payable immediately" and "any remaining

balance [was to be] payable during incarceration,"[1] he has not fully paid his restitution.

On or about August 15, 2016, Mr. Scott was arrested on new Utah state charges involving allegations of sexual abuse of a minor. On May 23, 2017, and based upon his guilty plea in state court, Mr. Scott was sentenced to two consecutive 15-year-to-life sentences for attempted rape of a child and attempted sodomy of a child. He is currently incarcerated at the Utah State Correctional Facility in Salt Lake City, Utah.

Recently Mr. Scott filed several motions with this court, each of which was denied. These include his motion to modify his sentence to waive restitution [ECF No. 95, filed May 30, 2025], his motion for extension of time to file a notice of appeal the order denying his motion to modify his sentence to waive restitution [ECF No. 99, filed Nov. 17, 2025], and his motion to waive copy fees and additional postage [ECF No. 105, filed Mar. 4, 2026.] In addition. Mr. Scott appealed the court's order denying his motion to modify sentence and waive restitution. [*See* ECF No. 104.] That appeal remains pending and merits briefing is now complete. [*See United States v. Scott*, No. 26-408 (10th Cir.), ECF Nos. 11, 14, 17.]

Notably, on July 27, 2026, Mr. Scott also filed with the Court of Appeals for the Tenth Circuit a substantially identical "Motion Rule 7A to Enforce Order" in which he seeks he very same relief he seeks in the Motion before this court. [*See United States v. Scott,* No. 26-408, ECF No. 20 at 1.]

---

[1] [*See* ECF No. 62, Judgment in a Criminal Case, at 6.]

**ANALYSIS**

Mr. Scott's Motion is confusing and lacks logical consistency.[2] Because he proceeds *pro se* the court must read his motion liberally despite its incoherence. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court will not, however, "assume the role of advocate for the pro se litigant." *Id.* And the court will not "supply additional facts, [or]… construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (citation omitted).

Under these approaches, the court reads Mr. Scott's Motion to present two related but slightly different claims.[3] First, and most prominently, he seeks to have the court stop the U.S. Department of the Treasury, acting through its Treasury

---

[2] As a threshold matter, Mr. Scott's Motion seeks an order under Rule 7A, which appears to be a Utah State court procedural rule. *See* UTAH R. CIV. P. 7A ("Motion to enforce order and for sanctions."). For obvious reasons that rule has no application in this federal court. In addition, Mr. Scott's Motion does not assert that any person has failed to comply with or has ignored any extant court order.

[3] In its response in opposition, the United States argues—citing two Tenth Circuit decisions—that the Motion should be denied under Federal Rule of Civil Procedure 7(b)(1)(B) because the Motion fails to "state with particularity the grounds for seeking the order." [*See* ECF No. 110 at 2–3.] Both decisions, however, only raise this issue in the context of civil matters, not criminal proceedings challenging restitution. *See Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1240 (10th Cir, 2006) (discussing Rule 7 in the context of a purported motion for reconsideration of a decision in a civil action under Fed. R. Civ. P. 59) and *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) (mentioning Rule 7 in addressing standards of a motion to amend a civil complaint). Even putting aside the question of whether this civil procedure rule is applicable in this criminal matter, the court does not agree that Mr. Scott's Motion—read liberally as required—fails to provide fair notice to the United States as to his theories. As discussed below, Mr. Scott's due process theory can be fairly gleaned from his Motion. Indeed, the United States appears to have had no difficulty in identifying and affirmatively responding to that theory in its opposition. [*See* ECF No. 110 at 3–4.]

Offset Program ("TOP")[4] or any other agency, from using any "Tariff-Stimulus-Refund"[5] to pay some of his restitution due in this case. [*See* ECF No. 108 at 1.] And second, he asserts that his due process rights may have been violated because he claims that he did not receive notice, or a court order, on August 6, 2021, and January 26, 2023, that TOP was offsetting two COVID-19 Economic Impact Payments from the IRS to pay a portion of the restitution he owed in this case. [*See* ECF No. 108 at 2],

As to his first claim, Mr. Scott's Motion must be denied because it is unripe. Specifically, he does not assert that he has sought or is otherwise entitled to receive any "Tariff-Stimulus-Refund," or that any such refund may be offset by any federal agency. The court notes that certain tariffs and duties recently paid under the International Emergency Economic Powers Act ("IEEPA") have been found to be invalid, *see Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026), and that the federal government has opened up a portal, operated through U.S. Customs and

[4] The Treasury Offset Program is a federal program, governed and authorized by the Debt Collection Act of 1982, 31 U.S.C. § 3701 *et. seq*., that allows the United States Department of the Treasury to collect delinquent non-tax debts owed to the federal government. *See* 31 U.S.C. § 3716(a). Under the TOP, "Congress has subjected to offset all funds payable by the United States, [31 U.S.C.] § 3701(a)(1), to an individual who owes certain delinquent federal debts, *see* § 3701(b), unless, as relevant here, payment is exempted by statute, *see* [31 U.S.C.] § 3716(e)(2)." *Astrue v. Ratliff*, 560 U.S. 586, 589 (2010) (internal quotation marks omitted). The TOP can be used to collect restitution that is due and delinquent. *See United States v. Capps*, No. 24-3083, 2025 WL 2080608, at *1 & n.1 (10th Cir. July 24, 2025) (unpublished) (noting that the Treasury Offset Program is used to collect restitution).

[5] Specifically. Mr. Scott "move[s] the Court for an order to stop Any Agency/Agencies from taking any monies from the Tariff-Stimulus-Refund. IRS 1040 Form by the IRS …." [ECF No. 108 at 1.]

Border Protection, for eligible businesses to claim refunds for invalid duties they may have paid.

While this program is still very much in flux, Mr. Scott has not claimed—nor could he claim since he has been incarcerated by the State of Utah since 2016—that he operated a business that may have paid any invalid duties under the IEEPA and may be eligible for such a refund. Thus, there does not appear to be any need for any order from this court (or any other court) to address Mr. Scott's claim that he may be entitled to receive some form of notice before any such offsets may be taken or that the court should bar any future offsets related to any Tariff-Stimulus-Refund. [*See* ECF No. 108 at 2–3.] This court cannot provide any advisory opinions based upon hypothetical events that may or may not happen. *See, e.g., United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019) (noting that a "'[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all'") (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up); *cf. North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (noting that for a claim to be cognizable in federal court "it must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts") (quotations and alterations omitted). Whether and under what circumstances the Treasury Offset Program may properly seek all or part of any such refund from Mr. Scott is simply not a justiciable question at this time.

As to his second claim, that also must also be dismissed. Mr. Scott rests his argument on his assertion that he did not receive "reasonable notice" of any offset to his COVID-19 Economic Impact Payments. To the extent this is an argument that Mr. Scott did not have notice of his enrollment in the TOP, the court notes that in response to Mr. Scott's prior motion to modify his sentence and waive restitution, the United States asserted that "on September 2, 2010, a notice was mailed to [Mr. Scott] stating that he would be added to the Treasury Offset Program (TOP) after 60 days" and that "[o]n February 10, 2011, [Mr. Scott] was added to TOP, after [his] failure make restitution payments from September 2010 to March 2011, when he was incarcerated." [*See* ECF No. 96 at 2.][6] Mr. Scott did not challenge that factual assertion. Thus, his due process claim based upon a lack of notice of enrollment appears to be foreclosed.[7]

6 In its response in opposition, the United States confirms these events by asserting that notices informing Mr. Scott that he was to be added to TOP were mailed to Mr. Scott on September 2, 2010, and November 1, 2010, and notice that Mr. Scott was subsequently added to TOP was mailed on February 10, 2011, and that TOP offsets were taken from Mr. Scott's financial resources on August 21, 2021, and January 3, 2023. [*See* ECF No. 110 at 2 & ECF No. 110-1, Decl. of Allyson Nelson, at ¶¶ 7–11.]

7 Whether it is appropriate for Mr. Scott to raise this notice issue by motion in his criminal case is open to debate. To the extent Mr. Scott has a claim concerning compliance under the TOP, it has been suggested by at least one court of appeal that such a claim should be brought under the Administrative Procedures Act ("APA") in a separate civil action against the federal agency that allegedly did not comply with the TOP. *See, e.g., Cox. v. United States Dep't of Justice*, No. 24-1606, 2024 WL 4635241 at *2–3 (7th Cir. Oct. 31, 2024) (unpublished) (suggesting that a separate civil action invoking the APA is the appropriate way to challenge TOP compliance issues including notice); *see also United States v. Cox*, No. 3:06-cr-92 (W.D. Ky.), Mem. Op. and Order issued Dec. 5, 2024, ECF No. 151, at 2 (noting that defendant's claim that he did not receive proper notice as to his enrollment in the TOP may not be "justiciable" in his criminal proceeding where the Treasury Department was not a party). Another court of appeal, however, addressed a similar notice argument that had been raised solely by motion in the defendant's criminal case. *See, e.g., United States v. Hayes*, No. 23-3252, 2023 WL 10553977, at *1–2 (6th Cir. Nov. 13, 2023) (unpublished) (affirming district court's denial of defendant's motion that

In addition, in connection with his motion to modify sentence and waive restitution, Mr. Scott filed a January 3, 2023, notice he received from the Treasury as an exhibit. [*See* ECF No. 95-1.] That notice informed him that the "U.S. Department of the Treasury, Bureau of the Fiscal Service (Fiscal Service), applied all or part of your payment to delinquent debt that you owe. This action is authorized by federal law." [*Id.* at 1] The notice further informed him that the amount offset was from the "Internal Revenue Service" and was in the amount of $1425.47." [*Id.*] And it specifically referred to the TOP. [*See id.* ("TOP Trace Number: 191941350).] Thus, even assuming that some additional notice was required other than (or in addition to) the initial notice that Mr. Scott received when he was enrolled in TOP, it appears that Mr. Scott did, in fact, receive notice when the TOP offset was taken from at least one of his Economic Impact Payments.

And to the extent that Mr. Scott is asserting that some form of a court order must first issue before any offset may be taken, he has not cited any authority for such a requirement. Although the TOP has various notice requirements, there is no requirement for entry of a separate formal court order before an offset may be taken.

And finally, in his Motion Mr. Scott appears to suggest that the Supreme Court's recent decision in *Hunter v. United States*, 146 S. Ct. 1702 (2026), somehow supports his claims. Any such hope is misplaced. In *Hunter*, the High Court held

---

funds were improperly withheld under TOP because he did not receive proper notice). Because neither party has raised this issue, the court need not resolve that question here.

that prosecutors cannot enforce an appeal waiver if doing so creates an egregious "miscarriage of justice." *Id*. at 1713. Mr. Scott's present Motion, however, does not concern the application of any appeal waiver. Moreover, in a decision concerning the very restitution order that is the subject of Mr. Scott's Motion, the Tenth Circuit long ago addressed the scope of Mr. Scott's appeal waiver and, applying the "miscarriage of justice" test now approved in *Hunter*, concluded that the "miscarriage-of-justice exception to enforcing the appeal waiver" does not apply to Mr. Scott. *See United States v. Scott*, 410 F. App'x 166, 168 (10th Cir. 2011) (unpublished) (dismissing appeal).

After examining all these issues, the court concludes that because Mr. Scott's Motion fails to establish a basis for the relief he seeks, his Motion must be denied.

## CONCLUSION

Accordingly, and for the reasons discussed above, **IT IS ORDERED** that Mr. Scott's Motion [ECF No. 108] is **DENIED AS UNRIPE** to the extent it concerns any claims related to any "Tariff-Stimulus-Refund"; and

**IT IS FURTHER ORDERED** that the remainder of the Motion is **DENIED**.

DATED this 21st day of September 2026.

BY THE COURT:

Hon. Clark Waddoups
United States District Judge